**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC | § | |
| | § | Civil Action No. 2:09-cv-279-TJW |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TICKETMASTER ENTERTAINMENT, | § | |
| INC., et al. | § | |
| | § | |
| Defendants. | § | Jury Trial Demanded |
| | § | |
| | § | |

**<u>DEFENDANTS EBAY INC., HALF.COM, INC., MICROPLACE, INC., VIVA GROUP, INC., PROSTORES, INC., PAYPAL, INC., AND BILL ME LATER, INC.'S MOTION TO DISMISS UNDER RULE 12(B)(6) AND REQUEST FOR HEARING</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION .............................................................................................................. 5

SUMMARY OF LEGAL ISSUES ..................................................................................... 8

STATEMENT OF ISSUE TO BE DECIDED BY THE COURT...................................... 9

LEGAL STANDARD......................................................................................................... 9

ARGUMENT .................................................................................................................... 11

I.  COUNT ONE OF THE PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
    PATENT INFRINGEMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO
    ALLEGE A PLAUSIBLE PATENT INRINGEMENT CAUSE OF ACTION........................ 11

    A.  There Is No Allegation That One Entity Practices Every Step Of The Claimed
        Method; Hence, There Cannot Be Direct Infringement By Defendants...................... 11

    B.  Defendants Do Not Maintain The Required Legal Relationship With Their
        Customers Who Participate In The Exchange Of Information Purported To
        Infringe The '730 Patent That Would Cause Them to Be Liable For Patent
        Infringement Based On Any Contributory, Joint Infringement, Or Inducement
        Theory. ........................................................................................................................ 13

    C.  There Can Be No Indirect Infringement Because There Is No Direct
        Infringement................................................................................................................ 16

CONCLUSION.................................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **CASES**

Page

*Acco Brands, Inc. v. ABA Locks Mfg. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007) ............................................................................... 16, 17

*Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*,
    289 F. Supp. 2d 986 (ND Ill. 2003) ................................................................................ 6

*Ashcroft v. Iqbal*,
    _ U.S. _, 129 S. Ct. 1937 (2009) ........................................................... 5, 8, 9, 11, 12, 18

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ........................................... 8, 10, 11, 12, 13, 14, 15, 16, 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 5, 6, 8, 9, 10, 11, 12, 17

*Charles E. Hill v. Amazon.com, Inc.*,
    No. Civ. A. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389, 2006 WL 151911
    (E.D. Tex. Jan. 19, 2006) ............................................................................................ 13, 14

*Charles E. Hill & Associates, Inc. v. Abercrombie & Fitch Co.*,
    No. Civ. A. 2:07-CV-234, DKT# 335 (E.D. Tex. July 2, 2009) ........................................ 14

*Cross Med. Prods. v. Medtronic Sofamor Danek*,
    424 F.3d 1293 (Fed. Cir. 2005) ........................................................................................ 8

*Emtel, Inc. v. Lipidlabs, Inc.*,
    583 F. Supp. 2d 811 (S.D. Tex. 2008) ....................................................................... 10, 16

*Fromson v. Advance Offset Plate, Inc.*,
    720 F.2d 1565 (Fed. Cir. 1983) ........................................................................................ 8

*Global Patent Holdings, LLC v. Panthers BRHC LLC*,
    586 F. Supp. 2d 1331 (S.D. Fl. 2008) ............................................................... 14, 15, 16, 17

*Golden Hour Data Sys., Inc. v. emsCharts Inc.*,
    No. 06-CV-381, 2009 WL 943273 (E.D. Tex. Apr. 3, 2009) ....................................... 8, 10

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ............................................................................................ 10

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ................................................................................................ 5

*McKesson Information Solutions, LLC v. EPIC Systems Corp.*,
    2009 WL 2915778 (N.D. Ga Sept. 8, 2009) ...................................................................... 15

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) .......................................................................................... 14

*Muniauction, Inc. v. Thompson Corp.*
    532 F.3d 1318 (Fed. Cir. 2008) ........................................................... 8, 10, 13, 14, 16, 18

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*,
    870 F.2d 1546, 1552, 1553 & n.9 (Fed. Cir. 1989) ............................................................ 7

## STATUTES AND RULES

FED. R. CIV. P. 8 ................................................................................................... 8, 9, 14, 17

FED. R. CIV. P. 12 ....................................................................................................... 6, 9, 17

35 U.S.C. § 271 .................................................................................................................. 7, 12

**INTRODUCTION**

Defendants eBay Inc., Half.com, Inc., MicroPlace, Inc., Viva Group, Inc., ProStores, Inc., PayPal, Inc., and Bill Me Later, Inc. (hereinafter "Defendants[1]") submit this Motion to Dismiss Plaintiff's First Amended Complaint for Patent Infringement (hereinafter "Complaint"), with prejudice.

Defendants hereby respectfully request an oral hearing on the Motion. As the Court is well aware, the expenses associated with discovery in patent matters is astronomical. A complaint found to have insufficient allegations does not justify discovery ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process…" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). Plaintiff has failed to allege facts in its Complaint that would allow this Court to "draw the reasonable inference that defendant[s] is[are] liable for the misconduct alleged." *Ashcroft v. Iqbal* __ U.S. __, 129 S. Ct. 1937, 1940 (2009) *citing Twombly*, 550 U.S. at 556. The Supreme Court has stated that a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Like the plaintiff in *Twombly*, TQP has not stated claims against the Defendants that pass the realm of conceivable to plausible because the communicative process covered by the patent at issue[2] requires two-party interaction between the Defendants and their customers' computers. Defendants do not exercise the requisite control or direction over its customers' computers and

---

[1] The seven Defendants, comprised of eBay Inc. and its six affiliates, have all been accused in the same manner by Plaintiff TQP Development, LLC. Therefore, each flaw pointed out by this Motion as to TQP's claims against eBay Inc. are also found in TQP's claims against the other six moving Defendants.

[2] *See* Complaint, Ex. A (U.S. Patent No. 5,412,730 (hereinafter the "'730 Patent")), where both claims refer to the activities of at least two entities, a "transmitter" and a "receiver." The '730 Patent is attached as an exhibit to the First Amended Complaint, and therefore can be considered by the Court in deciding this Motion under Rule 12. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1017, 1017 (5th Cir. 1996).

the patent method steps *they* complete during the process of exchanging information that would cause Defendants to incur liability under *any* circumstances. Therefore, discovery in this case will not, and cannot, cure the deficient claims made by Plaintiff because Plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

The Supreme Court recognizes the important reality of ensuring the plausibility standard of complaint pleading has been met *before* the economic impact of discovery takes hold. "Some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase. *Twombly*, 550 U.S. at 558 *citing Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (ND Ill. 2003). Plaintiff should not be afforded the opportunity of discovery because Plaintiff's allegations, although based upon the steps of the patented method (as they must be), lack both the "*Twombly* plausibility" and the foundation required by Rule 12(b)(6).

The '730 Patent involves a method for transmitting data over a communication link from a "transmitter" to a "receiver." The method involves both the encryption and decryption of data sent during a communication between these two distinct entities.

The '730 Patent's two claims are:

> 1. A method for transmitting data comprising a sequence of blocks in encrypted form over a communication link from a transmitter to a receiver comprising, in combination, the steps of:
> providing a seed value to both said transmitter and receiver,
> generating a first sequence of pseudo-random key values based on said seed value at said transmitter, each new key value in said sequence being produced at a time dependent upon a predetermined characteristic of the data being transmitted over said link,
> **encrypting the data sent over said link at said transmitter** in accordance with said first sequence,
> generating a second sequence of pseudo-random key values based on said seed value at said receiver, each new key value in said sequence being produced at a time dependent upon said predetermined characteristic of

> said data transmitted over said link such that said first and second sequences are identical to one another a new one of said key values in said first and second sequences being produced each time a predetermined number of said blocks are transmitted over said link, and
>
> **decrypting the data sent over said link at said receiver** in accordance with said second sequence.
>
> 2. The method as set forth in claim 1 further including the step of altering said predetermined number of blocks each time said new key value in said first and said second sequences is produced.  *See* Exhibit A of Complaint (emphasis added).[3]

Step 3 of claim 1 (i.e., encrypting the data over said link at said transmitter in accordance with said first sequence) and Step 5 of claim 1 (i.e., decrypting the data sent over said link at said receiver in accordance with said second sequence) are significant because Defendants' customers' computers (the "receivers") act independently of Defendants (the "transmitter"). *See* Exhibit A to Complaint.

With respect to this claim, Plaintiff, in Paragraph 37 of its Complaint, alleges:  1) "In addition, *eBay directs the client computer to encrypt data* comprising information sent from the client to the host server before it is transmitted over the link," and 2) that eBay[4] "*directs the client computer to decrypt data* transmitted from the host server in order to provide a useable display to, for example, a user of the client computer" (emphasis added).  Based upon these conclusory allegations, Plaintiff alleges that "Defendant eBay is thus liable for infringement of the '730 Patent pursuant to 35 U.S.C. § 271."  *See* ¶ 37 of Complaint.

Pursuant to the claim language and the allegations in the Complaint, there are, at a minimum, two parties involved in the '730 Patent method processes.  *See* ¶ 37 of Complaint. The crux of Plaintiff's Complaint is the alleged infringing action of Defendants "transmitting

---

[3]  Claim 2 of the '730 Patent is a dependent claim, therefore it cannot be infringed if claim 1 is not infringed. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552, 1553 & n.9 (Fed. Cir. 1989).

[4]  Plaintiff employs identical allegations against all the moving Defendants.

data comprising a sequence of blocks in encrypted form over a communication link covered by one or more claims of the '730 Patent to the injury of TQP." *See* ¶ 37 Complaint.  However, Defendants do not transmit encrypted data to themselves.  Rather, the encrypted data is transmitted to Defendants' customer's computer, i.e. the "receiver".  As Plaintiff asserts, "Certain data transmissions (both from the client computer to the host server, and from the host server to the client computer) are encrypted according to the claimed method." *See* ¶ 37 Complaint.  It is within this two-party communication that the sufficiency of Plaintiff's infringement claims against Defendants falls apart under controlling Federal Circuit authority.

## SUMMARY OF LEGAL ISSUES

Generally, where no single party performs all of the steps of the claim there can be no direct infringement. *See BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007) (*citing Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1568 (Fed. Cir. 1983), and *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)).  A narrow exception to this rule is sometimes referred to as "joint infringement." *Id*.  A claim based on joint infringement requires proof that a single "mastermind" defendant exercised such "control or direction" over the other participants that the mastermind can be found vicariously liable for the conduct of the other entities. *MuniAuction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Golden Hour Data Sys., Inc. v. emsCharts Inc.*, No. 06-CV-381, 2009 WL 943273, at *3 (E.D. Tex. Apr. 3, 2009).

To survive Defendants' motion to dismiss, the Complaint must satisfy the pleading requirement of Rule 8 of the Federal Rules of Civil Procedure as recently construed by the Supreme Court in *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 129 S. Ct. 1937 (2009).  The *Twombly/Iqbal* analysis is applicable to "all civil actions," regardless of the subject matter.

*Iqbal*, 129 S. Ct. at 1953. Under the "two-pronged approach" of this analysis, the complaint is first reviewed to identify allegations "that are not entitled to the assumption of truth" because they are "labels and conclusions" or are "naked assertions devoid of further factual enhancement." *Id.* at 1940, 1949-50. After disregarding those conclusory allegations, the remaining allegations are reviewed to determine whether they "plausibly suggest an entitlement to relief." *Id.* at 1951. In carrying out this analysis, the Supreme Court has said "…where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged* – but it has not '*show[n]*' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (*citing* FED. R. CIV. P. 8(a)(2)) (emphasis added). Under these holdings, the factual allegations must be reviewed to determine whether they "plausibly establish" an entitlement to relief in view of "more likely explanations" for the facts as alleged. *Id*. at 1951.

## STATEMENT OF ISSUE TO BE DECIDED BY THE COURT

Whether Count I of the Complaint against Defendants, should be dismissed with prejudice under FED. R. CIV. P. 8(a)(2) and 12(b)(6) for failure to state an actionable claim of infringement where the patent claims at issue require the combined actions of two entities, and Plaintiff does not—and cannot—plead any plausible claim of "joint infringement."

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is <u>entitled</u> to relief." FED. R. CIV. P. 8(a)(2) (emphasis added). The Rule obligates plaintiffs to provide sufficient detail to establish the "grounds" for relief. *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.

Ct. at 1949. A district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Accordingly, to survive a motion to dismiss on the pleadings, the complaint must allege "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added).

In order to state a claim for patent infringement, the patentee must allege that the accused infringer has practiced *every* element of at least one claim of the asserted patent. *See BMC Resources*, 498 F.3d at 1380 ("Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention.") (emphasis added). To allege direct infringement of a method claim, the TQP must allege that the Defendants perform each and every step of the claimed method. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

This standard can cause "difficulty" to a patentee where, as here, the patent recites that "different parties perform different acts within one claim." *BMC Resources*, 498 F.3d at 1381 (referring to such patent claims as "ill-conceived"). It is sometimes possible to bring such a claim, but only where the plaintiff **plausibly** alleges that a single "mastermind" defendant exercised "control or direction" over the other participants involved in carrying out the claimed invention **such that the mastermind can be found vicariously liable for the conduct of the other entities**. *MuniAuction, Inc.*, 532 F.3d at 1329-30; *Golden Hour*, 2009 WL 943273, at *3 ("to prove joint infringement, the patent holder must prove that 'one party exercises control or direction over the entire process such that every step is attributable to the controlling party, *i.e.* the 'mastermind'"); *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 827-40 (S.D. Tex. 2008) ("for liability to attach, the 'mastermind' must so control the third party in its performance of the

infringing steps that the third party does so as the defendant's agent"). Plaintiff baldly alleges "direction" of customers' computers, but such allegation is implausible.

The customers/end-users do not maintain the required legal relationship with Defendants when they are independently completing "their part" of the '730 Patent claim method that would make TQP's allegations plausible. *See* subsequent Parts A and B of Argument Section. This flaw renders Plaintiff's allegations that "Defendants direct the customer's computer…" as "labels and conclusions," and as such dismissal is warranted. *See* ¶ 37 of Complaint; *see* generally *Iqbal*, 129 S. Ct. 1937. "A claim has facial plausibility when the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949 (emphasis added) *citing Twombly*, 550 U.S. at 556. Plaintiff's complaint lacks the factual content describing the required relationship necessary to justify liability for infringement – because that factual content does not exist.

## ARGUMENT

**I.   COUNT ONE OF THE PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A PLAUSIBLE PATENT INFRINGEMENT CAUSE OF ACTION.**

**A.   There Is No Allegation That One Entity Practices Every Step Of The Claimed Method; Hence, There Cannot Be Direct Infringement By Defendants.**

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Resources*, 498 F.3d at 1378. "For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process." *Id.* at 1379. The Court in *BMC* went on to explain that this "every step" concept derives from the statute itself: "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States, or imports into the the United States any patented invention

during the term of the patent thereof, infringes the patent." *Id.* at 1380 *citing* 35 U.S.C. Section 271(a) (2000).

The '730 Patent requires at least two parties to complete the method: a "receiver" and a "transmitter." *See* Exhibit A to Complaint. There are at least two steps in the '730 method patent claim in which the client computer ("receiver") acts independently of Defendants' ("transmitter") in order to complete the transmission method. As previously stated, they are: 1) "<u>encrypting</u> the data over said link at said transmitter in accordance with said first sequence" (Step 3 of Claim1), and 2) "<u>decrypting</u> the data sent over said link at said receiver in accordance with said second sequence" (Step 5 of Claim 1). *See* Exhibit A to Complaint (emphasis added).

Additionally, for the method to be accomplished, the client computer acts outside the direction or control of Defendants when, at the least, the following two events occur: 1) the initial contact by the client computer to Defendants at the outset of the customer choosing to use Defendants' services; and 2) the client computer providing specific information requested by Defendants, and subsequently encrypted by them.[5] Thus, Plaintiff has not plead a claim against Defendants where relief could plausibly be granted because Defendants are incapable of completing each and every step of the '730 patent claim method. Defendants cannot initiate the method process, which the customer does after *they choose* to use Defendants' services, nor can Defendants provide the customer information required to complete the process.

Under *Twombly*, Plaintiff's allegations do not rise above "labels and conclusions" which, by their nature, do not demonstrate an entitlement to relief. 550 U.S. at 555. Indeed, the principle articulated by the United States Supreme Court is that the analysis of "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1941 *citing Twombly*, 550 U.S.

---

[5] All Defendants' customers must make the initial choice to use Defendants' website and services.

at 556.  It defies logic and common sense that Defendants alone can complete each step of the '730 Patent as written.  The Defendants have not – and cannot – perform each and every step of the claim.

> **B.   Defendants Do Not Maintain The Required Legal Relationship With Their Customers Who Participate In The Exchange Of Information Purported To Infringe The '730 Patent That Would Cause Them To Be Liable For Patent Infringement Based On Any Contributory, Joint Infringement, Or Inducement Theory.**

The Federal Circuit has held, "where steps of a method claim are performed by multiple parties, the entire method must be performed at the <u>control or direction</u> of the alleged direct infringer." *Muniauction, Inc.*, 532 F.3d at 1323 *citing BMC Resources*, 498 F.3d at 1380-81 (emphasis added).  Accordingly, the issue of infringement in the instant case turns on whether Defendants sufficiently control or direct other parties (e.g., the eBay customer/potential bidder) such that they can be said to have performed every step of the asserted claims.  "The control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction, Inc.*, 532 F.3d at 1330 *citing BMC Resources*, 498 F.3d at 1379.  It is axiomatic that Defendants do not, cannot, and, under any basic examination or understanding of Internet commerce, could not exercise such control.[6]

Facing this hurdle, there is little doubt that Plaintiff will cite this Court's holding in *Charles E. Hill v. Amazon.com, Inc.* in an attempt to deflect the current controlling jurisprudence.  No. Civ. A. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389, 2006 WL 151911 (E.D. Tex. Jan. 19, 2006).  In *Hill,* the court understood the relationship of vendor and customer to be sufficient for a finding of infringement ("The relationship described in the patents between the main and the remote computer is one of vendor and customer.  This is the very relationship relied

---

[6] Customers choose to initiate contact and provide information in each relationship with Defendants.

upon in this case to establish connection or control sufficient to warrant submission of direct infringement to the jury." *Id*. at 5). However, the relationship of vendor and customer is not sufficient for a finding of liability under the traditional requirements for vicarious liability: vendors generally cannot be held responsible for the actions of their customers. More importantly, <u>subsequent</u> to *Hill*, the Federal Circuit in both *BMC* (2007) and *Muniauction* (2008) clearly articulated the standard of the legal relationship required to find infringement in the multi-party and multi-step claim scenario. This of course means that *BMC* and *Muniauction* are now the controlling legal authority on the issue – and the legal relationship required to satisfy the direction or control standard must be more than mere vendor and customer.[7]

Post *BMC* and *Muniauction*, District Courts have specifically recognized the voluntary conduct of the Internet user as affecting the sufficiency of a plaintiff's allegations in the context of multi-party performance of a claimed method. In this regard, the instant case is like *Global Patent Holdings, LLC v. Panthers BRHC LLC, d/b/a The Boca Rotan Resort & Club*, where the Florida Court stated, "If no person ever visited Defendant's website, then Plaintiff's patent would never be [allegedly] infringed." 586 F. Supp. 2d 1331 (S.D. Fl. 2009) at 1335. In the case at bar, Defendants' customers initiate the process of exchange of information – always. This mirrors the Defendant's actions in *Global Patent Holdings* in that, "In this case the [alleged] patented process cannot start until the remote user visits the Defendant's website." *Id*.

The '341 Patent in the *Global Patent* case states:

---

[7] Defendants are aware of this Court's decision denying a Motion for Partial Judgment on the Pleadings in *Charles E. Hill & Associates, Inc. v. Abercrombie & Fitch Co.*, No. Civ. A. 2:07-CV-234, DKT# 335 (E.D. Tex. July 2, 2009). However, taken in isolation, the phrase "a patentee need <u>only</u> plead facts sufficient to place the alleged infringer on notice as to what he must defend" diminishes the plain language of the Federal Rules, which require a complaint to include a "short and plain statement of the claim <u>showing that the pleader is entitled to relief</u>." *Id.* at 7 (emphasis added) *citing McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007); FED. R. CIV. P. 8(a)(2) (emphasis added). *McZeal* was decided in the context of "the low bar for *pro se* litigants" and prior to the issuance of both the *BMC* and *Muniauction* decisions. *McZeal*, 501 F.3d at 1358.

> A method for downloading responsive data from a remote server comprising the following steps:
>
> > (a) identifying a query via a data input means and inputting said query to remote query and data retrieval means;
> > (b) transmitting said query from said remote query and data retrieval means to said remote server via an input/output means;
> > (c) receiving a compressed or non-compressed response to said query at said remote query and data retrieval means from said remote server via said input/output means;
> > (d) displaying a presentation corresponding to said compressed or non-compressed response on output means;
> > (e) wherein said compressed or non-compressed response is compressed prior to receipt at said remote query and data retrieval means, and wherein said compressed response is decompressed at said remote query and data retrieval means using an asymmetric decompression technique corresponding to an inverse operation of the technique used to compress said compressed or non-compressed response. *Id.* at 1333.

Like the '341 Patent, the '730 Patent claim method: 1) involves both a "transmitter" and "receiver," 2) accomplishes the manipulation of data (compression in the '341 Patent method, and encryption in the '730 Patent method), 3) is completed by at least two different parties acting in an independent fashion, and 4) is implicitly, yet undeniably, initiated by an Internet user voluntarily contacting the Defendants' website. TQP, exactly like the Plaintiff in *Global Patent*, "has not alleged that these individuals visit the Defendant's[s'] website[s] under Defendant's[s] 'direction and control.' Therefore, the Court cannot conclude that Defendant and the remote users are 'joint infringers' under *BMC Resources*." *Id.* at 1335.

The Northern District of Georgia also followed this logic: "In addition, like *Global Patent Holdings*, the method in MyChart does not begin until a computer user visits Defendant's website." *McKesson Information Solutions, LLC v. EPIC Systems Corp.*, 2009 WL 2915778, at *6 (N.D. Ga Sept. 8, 2009). The fact is that many issued e-commerce patents contain method claims that, by their very language, require an Internet user (using browser software on his/her

computer) to access a third party website (supported by a server running its own browser software) In such cases, including this one, no amount of discovery, or claim construction by the Court, is going to change that. In truth, denying a plaintiff the opportunity to proceed with such deficient claims, even to allow minimal discovery, is exactly what the Federal Circuit has done, and with little sympathy. *See, e.g., BMC Resources,* 498 F. 3d at 1381. In sum, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind'." *Muniauction, Inc.*, 532 F.3d at 1329 (emphasis added) *citing BMC Resources*, 498 F.3d at 1380-81. It is not plausible – nor possible – that Defendants, in relation to the exchange of information with their customers, can be deemed the "mastermind" of the exchange such that they are vicariously liable for their customers' choices.[8] As the Southern District of Texas opined, "These cases [referencing *BMC Resources*, *Rowe*, and *Gammino*] make clear that for liability to attach, the 'mastermind' must so control the third party in its performance of the infringing steps that the third party does so as the defendant's agent." *Emtel, Inc.,* 583 F. Supp. 2d 811 at 839 (three cases previously cited in opinion) (emphasis added).

    **C.**    **There Can Be No Indirect Infringement Because There Is No Direct Infringement.**

Theories of indirect infringement, including contributory infringement and inducement, "require[], as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." *BMC Resources*, 498 F.3d at 1379; *Acco Brands, Inc. v.*

---

[8] Similarly, there can be no plausible allegation—and Plaintiff has not made one—that there is any "contractual obligation" running from customers to Defendants (or vice-versa) that permits a finding of control or vicarious liability. See *Global Patent Holdings, LLC*, 586 F. Supp. 2d at 1335. Plaintiff "has, in no way, alleged that remote users are contractually bound to visit the website, it has not alleged that the remote users are Defendant[s]' agents who visit the website within the scope of their agency relationship nor has it alleged any facts which would render Defendant[s] otherwise vicariously liable for the acts of the remote user." *Id.* (emphasis added).

*ABA Locks Mfg. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) ("[i]n order to prevail on an inducement claim, the patentee must establish first that there has been direct infringement") (quotations omitted). As demonstrated above, Plaintiff's allegations fail to establish any act of direct infringement of the '703 Patent claims. Count I therefore also fails to state a claim for indirect infringement. *See Global Patent Holdings*, 586 F. Supp. 2d at 1335 (dismissing complaint where no single entity was alleged to perform all steps of the method, or direct and control others performing missing steps, as neither direct nor indirect infringement could exist).

Accordingly, Count I fails to sufficiently plead a claim for relief as to direct, indirect, or joint infringement, and it should be dismissed as to the Moving Defendants pursuant to FED. R. CIV. P. 12(b)(6).

## **CONCLUSION**

Customers choose whether or not to use eBay's auction services and the services offered by Defendants. Individuals using the Internet and who choose to do business with Defendants are under no legal obligation to do so. Furthermore, it is not plausible to think (or allege) that they are.

Plaintiff's Complaint should be dismissed because of 1) the implausibility of the allegations contained therein and 2) the language of the claims of the patent-in-suit, which plaintiffs admit require action by multiple parties, including customers of Defendants. Under well-settled Supreme Court and Federal Circuit precedent, the Complaint fails to state a claim upon which relief can be granted.

For these reasons, Defendants respectfully request the Court to hold Plaintiff accountable to the standards of FED. R. CIV. P. 8(a)(2) and 12(b)(6), as interpreted under *Twombly*, *BMC*

*Resources*, *Muniauction, Inc.*, and *Iqbal*, and dismiss all of Plaintiff's claims against Defendants, with prejudice.

Respectfully submitted,

/s/ Brian Craft
Brian Craft
State Bar No. 04972020
Eric H. Findlay
State Bar No. 00789886
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX  75703
Main: (903) 534-1100
Fax: (903) 534-1137
bcraft@findlaycraft.com
efindlay@findlaycraft.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ Brian Craft
Brian Craft