IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

TQP DEVELOPMENT, LLC

    v.                                  2:09-cv-279

TICKETMASTER ENTERTAINMENT, INC.,
ET AL

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff TQP Development, LLC ("TQP") files this response to Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted (hereafter "Motion"), to demonstrate that Defendants are attempting to use the Motion improperly to decide questions of fact concerning Defendants' liability under a joint infringement theory.   To grant the Motion on the arguments therein would reward Defendants merely for arguing that the facts in the case are contrary to what is alleged in the complaint, without any discovery.   That Defendants of course *disagree* with the allegations is a question that is for a determination on the merits *after discovery*—not on the pleadings based on a disagreement with the facts and theory alleged. Rather, the question before the Court is whether those allegations are sufficient to provide notice of TQP's claims of infringement and survive a motion to dismiss.   Because those allegations are adequate, as demonstrated by Defendants' own motion and herein, TQP asks that the Motion be denied.

I. ARGUMENT

    a. **Defendants Merely Disagree with the Facts Alleged and TQP's Theory—This is No Reason to Dismiss.**

Defendants' Motion represents a misapprehension of the purpose of a motion to dismiss and a misapplication of recent Supreme Court case law concerning what constitutes adequate pleading to survive a motion to dismiss. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, the Federal Circuit confirmed, in *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), a post-*Twombly* decision, that a patent infringement complaint containing all the elements of Form 18 (as TQP's Complaint does)—and none of the fine detail as Defendants would require—survives a motion to dismiss. *See also Monsanto v. E.I. DuPont De Nemours & Co.*, No. 4:09CV00686, 2010 WL 234951, at *13 (E.D. Mo. Jan. 15, 2010) ("Even with the refinements to Rule 8(a)(2) set out in *Twombly* and *Iqbal, notice pleading remains the rule*, and the Court sees no reason to believe that Pioneer is not on notice of the conduct Monsanto alleges to be the basis of its claim [for patent infringement]") (emphasis added) (attached at Anderson Decl., Ex. A).

This proposition applies even in the face of the divided infringement *allegations* raised by Defendants in their motion. TQP specifically alleged facts to demonstrate that Defendants themselves performed the required steps of the '730 Patent. However, TQP also alleged facts to demonstrate that Defendants exercised sufficient direction or control over any steps performed by a third party in the event that Defendants would claim to not perform those steps. Further, the fact that the complaint does contain enough detail to allow defendants to answer is evidenced by Defendants' motion itself. For example, Defendants' argue with respect to the merits of TQP's allegations:

> Pursuant to the claim language and the allegations in the Complaint, there are, at a minimum, two parties involved in the '730 Patent method processes. *See* ¶ 37 of Complaint. The crux of Plaintiff's Complaint is the alleged infringing action of Defendants "transmitting data comprising a sequence of blocks in encrypted form over a

communication link covered by one or more claims of the '730 Patent to
the injury of TQP." *See* ¶ 37 Complaint. However, Defendants do not
transmit encrypted data to themselves. Rather, the encrypted data is
transmitted to Defendants' customer's computer, i.e. the "receiver". As
Plaintiff asserts, "Certain data transmissions (both from the client
computer to the host server, and from the host server to the client
computer) are encrypted according to the claimed method." *See* ¶ 37
Complaint. It is within this two-party communication that the sufficiency
of Plaintiff's infringement claims against Defendants falls apart under
controlling Federal Circuit authority.
Motion at 7-8.

This paragraph sets forth Defendants' understanding of the allegations (e.g. "[t]he

crux of Plaintiff's complaint is the alleged infringing action of Defendants …"), argues

additional facts outside of any pleadings (e.g. "Defendants do not transmit encrypted data

to themselves"), and sets forth Defendants' ultimate response (e.g. "It is within this two-

party communication that the sufficiency of Plaintiff's infringement claims against

Defendants falls apart …").    It should be noted that indeed at the "notice" pleadings

phase, in the specific context of a patent infringement case, there is no need to include

such fine detail as to plead each and every claim of the patent-in-suit.   *See, e.g.,*

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc*., 203 F.3d 790, 794 (Fed. Cir.

2000).   Indeed, this District recognizes that such additional fact-specific information

regarding an accused product or system is something developed in a parties' contentions

and—even then—that information is only as detailed as the amount of information

feasibly available to a plaintiff so early on in the case.  *See, e.g., Am. Video Graphics,*

*L.P. v. Elec. Arts, Inc.,* 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005) (noting there are

times when a plaintiff's preparation of infringement contentions is restricted by a

defendant's sole possession of information relevant to infringement; ordering plaintiff to

supplement infringement contentions with specific references to source code within thirty

days of gaining access to code); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp.

2d 754, 755 (E.D. Tex. 2004) (rejecting at contention phase defendant's argument that plaintiff failed to disclose sufficient detail in contentions; recognizing District's local patent rules allowing plaintiff to provide more detail after technical discovery).

Furthermore, these are classic fact questions. Defendants cannot, by mere disagreement, manufacture a case for dismissal on the pleadings. That position, to which Defendants are entitled, is one that is encompassed in a Defendant's answer: a simple denial of the allegations against it.

   **b. TQP's Pleadings Provide Adequate Notice of Its Infringement Theory.**

TQP did address specific factual allegations with respect to the Defendants, beyond labels and conclusions. For example, despite Defendants' lengthy discussion of ¶37 of the Complaint, they fail to identify any language from the complaint that constitutes "labels and conclusions" argued under the mis-titled subheading "There Is No Allegation That One Entity Practices Every Step Of The Claimed Method." Dkt #115 at 11-13. This characterization of the Complaint is demonstrably false. For example, ¶37 includes the following factual allegations:

- "*ProStores provides*, or directs the client computer to provide, *a seed value for both the transmitter and receiver* in a symmetric encryption algorithm, and uses the same key to encrypt and decrypt data."

- "*ProStores generates*, or directs the client computer to generate, *a first sequence of pseudo-random key values* …"

- "ProStores encrypts data for transmission from the host server to the client."

- "*ProStores generates*, or directs the client computer to generate, *a second sequence of pseudorandom key values*"

- "ProStores decrypts data sent from the client in order to use the data …"

Anderson Decl., Ex. B (Complaint) at 28-29 (emphasis added).

These allegations are more than labels and conclusions, and demonstrate specific facts that, if proven, entitle TQP to prevail.  As the language in the complaint demonstrates, TQP alleges each claim step is performed by Defendants during a secured information exchange between a Defendants' server hosting one or more of websites ("Servers"), and customer or potential customer computers ("Clients") connecting to the websites in an interactive manner (collectively, "Infringing Transaction").  For example, during the course of an Infringing Transaction, as explained more specifically in the information that TQP will develop in its claim charts, in due course within the deadlines that Local Patent Rule 3-1 imposes, Servers provide a seed value, generate via an encryption algorithm a pseudo-random sequence of key values based on the seed value, and use the sequence of key values to encrypt data transmitted to the Clients.  During part of the same Infringing Transaction, Servers receive encrypted data from Clients, generate via an encryption algorithm a pseudo-random sequence of key values based on the seed value, and decrypt data received from the Clients.  Thus, a statement that TQP has not alleged facts adequate to support its infringement allegations cannot be supported, and mere denial of those facts in a motion to dismiss is insufficient to win judgment based on pleadings alone.

In addition, TQP went further than the basic Form 18 information, approved by the Federal Circuit in *McZeal*, to also address the very specific means by which a joint infringement theory may apply, in the event that an accused infringer argues that it fails

5

to perform some of the steps of the patent in suit.  For example, the allegations identified above, in addition to alleging actions performed by Defendants, also allege actions directed to be performed by Defendants.  TQP's allegations are in keeping with the recent Federal Circuit case law concerning how to proceed in cases of divided infringement. *See generally BMC Res., Inc. v Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) (setting forth "direct or control" test to impose liability when accused infringer does not perform all steps); *see also Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) (applying principles developed in *BMC Resources*).  Defendants cannot stretch the Supreme Court precedent of *Twombly* so far beyond the plain language of Rule 8— requiring a **short, plain statement** adequate to give notice to the defendant—to suggest that have no adequate notice or information of the claims against them.  Defendants have adequate information—they just disagree with the substance of it.

Perhaps recognizing that TQP's pleadings are indeed adequate on this front, because they specifically encompass the "direction" paradigm that the Federal Circuit expressly established in *BMC Resources* as one potential means of overcoming a divided infringement theory or issue, Defendants purport to adopt a gross misreading of the recent Federal Circuit case law.  Aside from the threshold problem, Defendants face— that  a motion to dismiss is no place in which to debate the legal nuances of such a significant clarification in Federal Circuit precedent such as occurred in *BMC Resources*—Defendants attempt to limit severely what the Federal Circuit meant in *BMC Resources*.  They cannot do so, and certainly not based on the factual scenarios in those cases, which were **fact specific**, based on information the plaintiff was able to obtain **through discovery**.

Indeed, the Federal Circuit left open a wide array of fact scenarios in which there could be a particular fact pattern that would meet the divided infringement arguments. It is not merely a "vicarious liability" paradigm that is the one and only way to prevail on a divided infringement scenario. This is a fundamental misreading of *BMC Resources* and *Muniauction* in tandem. The Federal Circuit could not have accounted for ***all*** potential fact scenarios (developed after the plaintiff has obtained the defendants' documents through discovery) that would or could meet the "direction or control" paradigm. Instead, those decisions provide the bench and bar with insight and public policy principles to fix where the ends of the spectrum lie for "direction (or control)." The court in *Muniauction* did fix one end of the spectrum of facts that ***could*** lead to liability for the infringer when it does not perform all the claim steps: when its control is such that it would be ***vicariously liable*** for that third party's actions. Although some courts have misread *BMC Resources* and *Muniauction* as limiting the direct or control test to only the higher end of the spectrum where vicarious liability lies, *Muniauction* does not hold as much. *Muniauction* identifies a vicarious liability relationship as an ***example*** of when the direction or control test would be satisfied: "Under *BMC Resources*, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330. Other district courts, even those finding insufficient evidence of direction or control, reject extrapolating any different holding (as does *Global Patent Holdings*) from *Muniauction*.[1]

---

[1] *Muniauction*, as a panel decision, cannot be read in a way to overturn a prior panel opinion such as *BMC Resources*. One panel of the Federal Circuit cannot overturn a prior panel opinion. *See El Shifa Pharm.*

TQP is entitled to discovery and to develop more specific facts of this case fall within that broad range of conduct that *BMC Resources* and *Muniauction* left open as potentially raising a fact question on divided infringement liability, keeping in mind the policy concerns expressed in those cases.  For example, the Federal Circuit spoke clearly to a rule that would ensure the "mastermind" will not escape liability for infringement even though the mastermind does not practice every step of the claim.  *See BMC Res.*, 498 F.3d at 1381 ("[i]t would be unfair indeed for the mastermind in such situations to escape liability").  Nor may an infringer contracting out steps reap the benefit of the divided infringement principles.  *Id.* (noting mastermind could not, for example, "avoid infringement" "simply by contracting out steps of a patented process to another entity) (citing *Shields v. Halliburton Co.*, 493 F. Supp. 1376, 1389 (W.D. La. 1980)).  The Federal Circuit firmly rejected such a proposition.

Given the policy guidance of *BMC Resources* and *Muniauction* and the disparate facts of this case (which remain to be developed through discovery), TQP is entitled to proceed to litigate its case, and conduct discovery and provide contentions pursuant to the Local Patent Rules in this District based on TQP's adequate allegations of infringement.  This Court's recent decision in *Actus, LLC v. Bank of America Corp.* confirms that TQP is indeed entitled to so proceed.  Anderson Decl., Ex C.  This Court denied a 12(b)(6) motion in *Actus* on like grounds:  (i) the defendant's motion there also sought the type of specificity that would have required a plaintiff to attach "fully-developed contentions to its complaint"[2]—a proposition the Court rejected[3]; and (ii) sought that relief far too early

---

*Indus. Co. v. United States*, 378 F.3d 1346, 1352 (Fed. Cir. 2004) (noting that to overrule Federal Circuit precedent that court "must rule en banc").

[2] "The Court does not require that plaintiffs in a patent infringement lawsuit attach fully-developed infringement contentions to its complaint." Anderson Decl. Ex. C (Slip Op. in *Actus, LLC v. Bank of Am.*, No. 2-09-cv-102-TJW (E.D. Tex. Feb. 10, 2010) (Ward, J.)).

in the proceedings, before the Court even construed the claims in a way that reflected the defendants' interpretation—and before even any claim construction discovery.[4] Defendants' position is just as incredible here and their motion merits the same resolution: denial.

## II. TQP Has Ample Theory and Facts It Is Entitled to Develop—Its Arguments Are Well-Grounded and Not Frivolous.

Based on the information presently available, it appears that each element of each asserted claim is literally infringed by the Accused Instrumentalities as a result of actions performed by Defendants directly.   Additionally, it appears that even where Defendants may claim that certain actions are not performed by Defendants directly, each element of each asserted claim is literally infringed by actions performed under the direction or control of third parties.   Finally, it appears that even where Defendants may claim that certain actions are not performed by Defendants, each element of each asserted claim is infringed under the doctrine of equivalents, because a person of ordinary skill in the art would find that the differences between that claim language and the operation of the Accused Instrumentalities, as explained by Defendants, to be insubstantial.   For example, regardless of what Defendants may argue regarding the operation of the Accused Instrumentalities, the various Servers will nevertheless perform data encryption (same function) through the use of deterministic, pseudo-randomly generated key values generated using a seed value (same way) in order to protect data being transmitted over a packetized data network (same result).   For example, if Defendants argue that Servers fail

---

[3] Anderson Decl., Ex. C, *Actus, LLC*, slip op. at 4.

[4] The Court described just how  the "The pending motion asks the Court to simultaneously adopt a construction that the claims can only be performed by multiple actors—before the completion of claim construction discovery and without the benefit of thorough claim construction briefing—and then impose an excessively conservative pleading requirement on those claims." Anderson Decl., Ex. C, *Actus, LLC*, slip op. at 3.

to perform one or more claimed steps, for example during a single transmission of data during an Infringing Transaction, Defendants cannot deny that the same function is being performed in the same way to achieve the same result, demonstrating the difference to be insubstantial.

### III. Dismissal Is Too Extreme of a Remedy

Finally, even if the Court is persuaded that Defendants' Motion has merit, TQP respectfully argues that dismissal is nevertheless inappropriate in this context.  This case is in its very early stages.  In addition, unless Defendants assert that *Twombly* and *Iqbal* somehow created a vehicle for early summary judgment disposition, even Defendants must acknowledge that they seek adequate notice of TQP's infringement allegations. First, Defendants already have adequate notice, as the arguments in their Motion demonstrate.  Second, any additional information regarding TQP's allegations are more appropriately exchanged through discovery.  *P.A. Advisors, LLC v. Google, Inc.*, 2:07-CV-480, 2008 U.S. Dist LEXIS 71285 at *20-21 (E.D. Tex. August 7, 2008) (attached at Anderson Decl., Ex. D).  TQP further notes that it has yet to serve its infringement contentions and document production pursuant to P.R. 3-1 and 3-2, which is the very discovery vehicle provided in the local rules to address such issues.  Therefore, while TQP believes that it has already provided adequate notice, if the Court disagrees for whatever reason, TQP respectfully submits that the appropriate remedy would be to allow TQP to file an amended complaint against Defendants.

### IV. Conclusion

TQP requests that the Court (i) grant TQP's motion for leave and for extension of time and (ii)  deny the motion to dismiss, and (iii) allow TQP to proceed with discovery to further develop its theories of infringement.

10

Dated: March 2, 2010                    Respectfully submitted,

                                        By: /s/ *Patrick R. Anderson*
                                        Patrick R. Anderson

                                        Kip Glasscock, Jr., TX Bar # 08011000
                                        E-mail: kipglasscock@hotmail.com
                                        KIP GLASSCOCK, P.C.
                                        550 Fannin, Suite 1350
                                        Beaumont, Texas 77701
                                        Telephone: 409/833-8822
                                        Facsimile: 409/838-4666

                                        Marc A. Fenster, CA Bar No. 181067
                                        E-mail: mfenster@raklaw.com
                                        RUSS, AUGUST & KABAT
                                        12424 Wilshire Boulevard 12th Floor
                                        Los Angeles, California 90025
                                        Telephone: 310/826-7474
                                        Facsimile: 310/826-6991

                                        John M. Bustamante, TX Bar # 24040618
                                        Email: jmb@bustamantelegal.com
                                        BUSTAMANTE PC
                                        54 Rainey Street, No. 721
                                        Austin, Texas 78701
                                        Telephone: 512/940-3753
                                        Facsimile: 512/551-3777

                                        Patrick R. Anderson
                                        Michigan Bar No. P68961
                                        4225 Miller Road, Bldg. B-9
                                        Suite 358
                                        Flint, MI 48507
                                        Telephone: (517)303-4806
                                        Fax: (248) 928 9239
                                        E-mail: Patrick@prapllc.com

                                        **Attorneys for Plaintiff**
                                        **TQP DEVELOPMENT, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

March 2, 2010                                      \s\ *Patrick R. Anderson*
                                                   Patrick R. Anderson